IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:08-CT-3116-BO

| | |
|---|---|
| DAVID K. DANSER, </br>     Plaintiff, | ) </br> ) </br> ) |
| v. | )     O R D E R |
| | ) |
| PATRICIA STANSBERRY, et al., </br>     Defendants. | ) </br> ) |

David K. Danser ("plaintiff" or "Danser") is a federal inmate who filed this action for events occurring while in custody at the Federal Correctional Institution at Butner, North Carolina. The suit is brought pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Now before the court is defendants' motion for summary judgment [D.E. 93] and defendant's motion to strike the response in opposition to the motion [D.E. 102]. Plaintiff has responded to both pending motions [D.E. 97-98, 105]. Defendants likewise replied to both responses [D.E. 101, 106]. Additionally, on February 6, 2013, the court held a summary judgment hearing on the matter. In this posture, the matter is ripe for determination.

Procedural History

A brief outline of the procedural history of the case is helpful. On September 2, 2008, Danser, acting pro se, filed this complaint [D.E. 1]. Plaintiff named as defendants Warden Patricia Stansberry, Officer Carmine Diaz, Jr., and Lieutenant Robert Dodson.[1] Id. On January 28, 2010, the court granted defendants' motion to dismiss based on the complaint having been

---

[1] Danser's original complaint misspelled Lieutenant Dodson's last name, "Dobson." The court shall use the correct spelling.

filed outside the statute of limitations and denied as moot Danser's motions to amend the complaint and compel discovery and defendants' motions for protective orders [D.E. 41].

On February 9, 2010, Danser filed a motion for re-consideration of the dismissal, illustrating through an exhibit, that he had originally attempted to file the complaint within the statute of limitations, but that the complaint was rejected without being filed [D.E. 43]. Based on plaintiff's evidence, on July 8, 2010, the court granted the motion for reconsideration and re-instated the action [D.E. 49]. The court also appointed North Carolina Prisoner Legal Services to represent plaintiff [D.E. 59], who requested leave to file an amended complaint [D.E. 64] which was granted [D.E. 67], and Lieutenant Bobby Roy and Officer Theron Boyd were added as defendants.

On November 14, 2011, the court denied defendants' motion to dismiss or for summary judgment until discovery was undertaken [D.E. 79]. Thereafter, discovery was conducted by the parties and on May 7, 2012, defendants filed the instant motion for summary judgment [D.E. 93].

Issue

Danser alleges violations of his Eighth Amendment rights in that defendants were deliberately indifferent to his safety and failed to protect him from an assault by another inmate. Specifically, he alleges that inmate Scott Dell Gustin brutally assaulted him on August 22, 2005. In the assault, plaintiff was severely injured, was hospitalized, and underwent surgery. Inmate Gustin was convicted on June 30, 2008, of one count of assault resulting in serious bodily injury in violation of 18 U.S.C. § 113(a)(6). Specifically, Danser asserts that if defendants Stansberry and Roy had enforced Bureau of Prisons ("BOP") procedures and defendant Boyd had checked

2

the BOP classification system, Danser and Boyd would not have been placed into the same recreational cage on August 22, 2005, and the assault would not have occurred.

Facts

David K. Danser is a federal inmate serving a term of 370 months for the sexual exploitation of children in violation of 18 U.S.C. § 2251(a), sexual abuse of a minor in violation of 18 U.S.C. § 2243(a), and possession of child pornography in violation of 18 U.S.C. 2252(a)(4)(B). On August 21, 2005, Danser had been assigned to the Special Housing Unit (SHU) at the Federal Correctional Institution in Butner, North Carolina, pending an investigation of a verbal argument between him and another inmate. [D.E. 97-1], Pl's Ex. A, ("Danser Dec.") at ¶ 4.

The SHU is a secure housing unit where "inmates are securely separated from the general inmate population." 28 C.F.R. § 541.21. "It is a closely supervised area," that is considered a "lock down unit at all times." [D.E. 98-1] Pl's Ex. B ("SHU Post Orders") at 1.[2] "All ranges grills/doors, cell doors, recreation door and recreation cage grill doors will remain secured at all times." Id. On the SHU, inmates remain in their cells up to 23 hours a day. Danser Dec. at ¶ 6. They are offered three showers per week and five hours of outside recreation per week. 28 C.F.R. § 541.31(g); SHU Post Orders at 7, 12; Am. Compl. [D.E. 64-1] ¶ 9. Otherwise, the inmates remain in their cells at all times for the sake of security. Id. The SHU houses BOP offenders, whose "presence in the general population poses a threat to life, property, self, staff, other inmates, the public, or to the security or orderly running of the institution," as well as

---

[2]Although Danser sought and received permission to file several exhibits under seal [D.E. 99-100], the parties discuss the information in these sealed exhibits in the unsealed memoranda of law [D.E. 97, 106].

3

inmates who are subject to protective custody because it was requested or staff determines the inmate requires protection. 28 C.F.R. § 541.23(c)(1), (3); see Am. Compl. ¶ 8.

On August 22, 2005, defendant Boyd arrived at FCI-Low to begin his 6:00 a.m. to 2:00 p.m. shift. [D.E. 94-1], Defs. Ex 2 ("Boyd Dep.") at 14. On that day, there was a manpower shortage. Boyd Dep. at 31. Thus, while defendant Boyd was initially assigned the SHU 2 post, he was reassigned to the SHU 3. Boyd Dep. at 31. Officer Kornega was the SHU Officer-in-Charge and was responsible for entering information into the SHU computer and controlling ingress and egress into and out of the main doors. Boyd Dep. at 18-19. Officers assigned the SHU 2 and 4 posts were responsible for the overall operation of the SHU. Boyd Dep. at 19. The officer assigned the SHU 3 post is responsible for the recreation area. Boyd Dep. at 19 ; Ex. 3, United States v. Scott Dell Gustin, 5:07-CR-172-BO (E.D.N.C.) (Trial Transcript ("Trial Tr.") at 52. The officer assigned to the SHU 3 post is the only SHU officer who retains keys to the recreation cages. Boyd Dep. at 100. Defendant Diaz was assigned roving patrol duty outside the fence perimeter. Boyd Dep. at 103.

As the recreation officer that morning, Theron Boyd went from cell to cell asking inmates if they wished to go to outside recreation. Boyd Dep. at 14 and 32. Boyd used the computer-generated "SHU report" to begin to assign inmates to recreation cages. Boyd Dep. at 35. According to Boyd, when making recreation cage assignments, Boyd considered: (1) information listed on the "SHU report," (2) custody level, and (3) geographic convenience, i.e., where inmates' cells are located. Id.

Boyd placed Danser into a recreation cage in the SHU. Gustin Trial Tr. at 52, 61-62. There were also several other inmates inside the cage in addition to Gustin. Id. Gustin was a

4

federal inmate serving an original sentence for possession with intent to distribute heroin and methamphetamine.³ Gustin was housed in the SHU at FCI-Butner because he had recently assaulted a fellow inmates. [D.E. 98] Pl's Ex. C, Defs' Resp. to Interrogs & Requests for Adm. ("Defs' Rogs & RFAs") at 6; see Am. Compl. ¶ 11.

Gustin is a member of the La Nuestra Familia. " La Nuestra Familia is a violent, predatory, and assaultive gang that has had a disruptive influence on federal prisons." [D.E. 97-5] Pl.'s Ex. K, Testimony of Lt. Troy Fardel in U.S. v. Gustin, 1:09-CR-10019 (C.D. Ill.) (explaining Gustin's gang affiliation with La Nuestra Familia and the context of prison gangs in federal prison) at SA 47-61. According to the U.S. Department of Justice, La Nuestra Familia is "highly structured" and "extremely violent." [D.E. 97-6] Pl.'s Ex. L, DOJ Fact Sheet at 1.

On the morning of August 22, 2005, defendant Boyd left all the inmates unsupervised for a period of time.⁴ There were also no security cameras in the area at the time. Trial Tr. 54-55. At this point, inmate Gustin removed his jumpsuit and knocked Danser to the ground, and proceeded to repeatedly kick and stomp Danser's face, head, and body. Trial Tr. 9-10. Danser rolled up into a fetal position. Am. Compl., ¶ 15. Danser was bleeding badly and covered in bruises and abrasions, including all over his head. Id., ¶ 18. He suffered a punctured lung and

---

³Since entering prison in 2003, Gustin has accumulated further federal convictions including Assault Inflicting Serious Bodily Injury (5:07-CR- 172-BO (E.D.N.C.)) and Assault with Intent to Commit Murder and Assault with a Dangerous Weapon (1:09-CR-10019 (C.D.Ill.)). Gustin is now serving a life sentence. See U.S. v. Gustin, 1:09-CR-10019 (C.D.Ill.). These convictions are set out for clarity of Gustin's current status as a federal inmate only; such subsequent convictions could not have been part of defendants' knowledge and calculation of risk on the date of Danser's assault. Parrish ex. re. Lee v. Cleveland, 372 F.3d 294, 303-304 (4th Cir. 2004).

⁴The unsupervised period of time is disputed. Plaintiff argues it was 5 to 10 minutes, while defendants contend it was less.

5

broken ribs. Id. Prison officials transported Danser to an outside hospital, where he was given emergency surgery to remove a ruptured spleen. Id.

Defendants assert "that there was no obvious indicator to Defendant Boyd that placing Danser and Gustin , in the same cell posed a substantial risk of harm to Danser." Reply in Opp. to Pl's Resp. at 7. Boyd testified that he did not take into consideration (1) whether "an inmate has a history of assaulting other inmates," or (2) the reason why an inmate was assigned to the SHU. Boyd Dep. at 37-38. Boyd stated, however, that this type of information is "enter[ed] . . . onto the computer." and available to officers in the SHU. Id. at 94-95.

BOP maintains extensive computerized classification records regarding its inmates called "Sentry." [D.E. 97-3] Pl.'s Ex. F, BOP Program Statement, P5100.08, "Inmate Security Designation and Custody Classification" and Chapter 3, page 3. The purpose of the BOP's classification procedures is to "place each inmate in the most appropriate security level institution that also meets their program needs and is consistent with the Bureau's mission to protect society." Id. at Chapter 1, page 1. Sentry contains information about (1) Race, (2) Sex, (3) Offense/Sentence, (4) Severity of Current Offense, (5) Criminal History Score, (6) History of Violence, (7) History of Escape, (8) Membership in a "Disruptive Group," and (9) Sex Offender status. Id. at Chapter 4, page 16. In addition to Sentry, BOP maintains the Central Information Monitoring (CIM) system to "monitor . . . certain inmates who present special needs for management." 28 C.F.R. § 524.70. CIM's purpose is "to provide protection to all concerned and to contribute to the safe and orderly operation of federal institutions. Id. Authority for all actions

6

relative to the CIM system is delegated to Regional Directors and to Wardens. 28 C.F.R. § 524.71. The CIM classification includes:

> (1) Information about membership in "disruptive groups," such as prison gangs that "have a history of disrupting operations and security in either state or federal penal institutions. 28 C.F.R. § 524.72(d).
> (2) Information about "separation" status i.e., whether an inmate "may not be confined in the same institution . . . with other specified individuals" because of a history of conflict or because one inmate gave testimony against another inmate. 28 C.F.R. § 524.72(f).

On the date of the assault, according to the records proffered by plaintiff, the Sentry database and the CIM classification for Danser and Gustin show Danser classified as a "Sex Offender," and Gustin classified as a member of "La Nuestra Familia." [D.E. 98-4] Pl.'s Ex. G, 8/22/05 Report of Incident. Both Danser and Gustin had "Separation" orders in effect. Id. Danser had "Separation" orders because he had previously been the victim of assault based on his status as a sexual predator. [D.E. 98-5], Pl.'s Ex. H, CIM Case Information Summary for David Danser (Aug. 26, 2005) ("Inmates [Redacted] and [Redacted] assaulted inmate Danser, D. while at [Redacted] because they became aware of his history of molesting children."); Ex. A, Danser Dec. at ¶ 8.

Discussion

    i.    <u>Motion to Strike</u>

Defendants seek to strike three exhibits attached to plaintiff's response in opposition to summary judgment:

> (1) [D.E. 97-4], Pl.'s Ex. J, (Vasquez affidavit about classification of sex offenders within the Sutter County jail);
> (2) [D.E. 97-5], Pl.'s Ex. K, (Fardel testimony); and
> (3) [D.E. 97-6], Pl.'s Ex. L, (DOJ Fact Sheet about La Nuestra Familia).

7

For the reasons asserted in plaintiff's opposition to the motion to strike, the motion is denied. See e.g., Fed. R. Civ. P. 26; Fed. R. Evid. 401; Fed. R. Evid. 702; Jama v. City and County of Denver, 280 F.R.D. 581 (D. Col. 2012) (a court may take judicial notice of public records, for example affidavits); Ford v. Hamilton Co. Juvenile Court, 2007 WL 2302816 (S.D. Ohio 2007) ("The Court finds that Ford's failure to disclose was harmless. Ford did nothing more than rely upon public records, which were available to Defendant on the County's website."); Falk v. Wells Fargo Bank, 2011 WL 3702666 (N.D. Tex. 2011) (denying objections to admissibility of undisclosed public records).

  ii. <u>Summary Judgment</u>

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading. Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted & emphasis removed). A mere scintilla of evidence supporting the case is not enough. Anderson, 477 U.S. at 252. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. Matsushita Elec. Indus. Co., 475 U.S. at 586-587.

### iii. Qualified Immunity

Defendants assert qualified immunity. Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012); Pearson v. Callahan, 555 U.S. 223, 231–32 (2009). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Reichle, 132 S. Ct. at 2093; Messerschmidt v. Millender, 132 S. Ct. 1235, 1244–45 (2012); Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011); Pearson, 555 U.S. at 231–32.

The court must ask two questions to determine whether qualified immunity applies. See, e.g., Reichle, 132 S. Ct. at 2093; Pearson, 555 U.S. at 232; Evans v. Chalmers, No. 11-1436, 2012 WL 6554846, at *5 (4th Cir. Dec. 17, 2012); Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010); Unus v. Kane, 565 F.3d 103, 123 n.24 (4th Cir. 2009); Miller v. Prince George's Cnty., 475 F.3d 621, 626–27 (4th Cir. 2007); Bostic v. Rodriguez, 667 F. Supp. 2d 591, 605–06 (E.D.N.C. 2009). The court decides which question to address first. Pearson, 555 U.S. at 236; see Reichle, 132 S. Ct. at 2093; al-Kidd, 131 S. Ct. at 2080. The court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." Pearson, 555 U.S. at 232. The court also must determine "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Id. (quotation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every

9

reasonable official would have understood that what he is doing violates that right." al-Kidd, 131 S. Ct. at 2083 (alterations in original) (quotations omitted); see Reichle, 132 S. Ct. at 2093; Anderson v. Creighton, 483 U.S. 635, 640 (1987). The United States Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 131 S. Ct. at 2083; see Reichle, 132 S. Ct. at 2093. Defendants are entitled to qualified immunity if the answer to either question is "no." See, e.g., al-Kidd, 131 S. Ct. at 2080; Miller, 475 F.3d at 627; Bostic, 667 F. Supp. 2d at 606.

    iv.    Failure to Protect

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners ." Farmer v. Brennan, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Id. at 824, citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Likewise, "[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Id. at 829; see also, Helling v. McKinny, 509 U.S. 25 (1993); Wilson v. Seiter, 501 U.S. 294 (1991); Estelle v. Gamble, 429 U.S. 97 (1976).

However, "not every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer v. Brennan, 511 U .S. 825, 834 (1994). "Deliberate indifference" in this context is a subjective standard: "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." Beers–Capitol, 256 F.3d at 125. It is not sufficient that the official should have known of the risk. Id. at 133. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety "in the usual ways, including inference from circumstantial

evidence." Farmer, 511 U.S. at 842, 114 S.Ct. 1970. In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id.

Prison officials may escape liability for deliberate indifference claims in several ways. They "might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844, 114 S.Ct. 1970. "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable" on a failure-to-protect claim. Id. at 845, 114 S.Ct. 1970; see also Hamilton, 117 F.3d at 746 (noting that prison officials have "a duty ... to take reasonable measures to protect prisoners from violence at the hands of other prisoners") (quotation marks omitted).

    a.    Defendants Dodson and Diaz

To begin, dismissal of defendants Diaz and Dodson is warranted. No specific allegations have been alleged against either defendant. Neither have claims of deliberate indifference through the failure of defendants Diaz and Dodson to protect Danser been articulated and argued within the amended complaint, pending motion for summary judgment, responses, and replies. While it appears defendant Diaz was assigned roving patrol duty outside the fence perimeter on the day of the assault, no further allegation or details are argued. No details are given as to

11

Dodson's inclusion within the suit. Therefore, Diaz and Dodson are shielded by qualified immunity and summary judgment is appropriate.

    b.  Defendants Stansberry, Roy, and Boyd

Turning to the three remaining defendants, dismissal is not appropriate. It is clear to the court that on August 22, 2005, a sex offender, David K. Danser, and a violent gang member, Scott Dell Gustin, were placed together into a recreational cage while in custody of the SHU. Danser was then assaulted and severely injured. Both inmates had separation orders in place, but Officer Boyd did not consider the separation orders on that day and in assigning the inmates to the recreational cage. The uncontradicted evidence is that defendant Boyd relied on the Special Housing Unit ("SHU") report and that the SHU report did not contain security threat group ("STG") information such as gang affiliation or central inmate monitoring system ("CIMS") information such as sex offender status information. It is material fact in question as to whether the information provided to Officer Boyd had the separation orders apparent on the report, and whether failure to have this information on the report was a policy violation. It is clear that it is contrary to the SHU Post Orders to leave the recreational cage unsupervised. However, defendant Boyd left the recreational cage unsupervised for a period of time. There were no surveillance cameras for the area on the day in question.

The record also shows that Boyd was not disciplined or orally reprimanded for failing to comply with the BOP policy in placing these two inmates together or in leaving his recreational post. At this juncture in the litigation, there are multiple material issues of fact as to whether defendant Boyd failed to protect Danser as required by the Eighth Amendment, and he is not shielded by qualified immunity for the purpose of summary judgment.

Likewise, to the extent that FCI-Butner or the SHU had a policy or practice of ignoring or failing to update the BOP classifications in Sentry and the CIM system, or failed to adhere to acknowledged correctional best practices regarding the protection of sex offenders, Boyd's supervisors, defendant Lieutenant Roy, as the Special Housing Lieutenant in charge of the SHU, and defendant Warden Stansberry are directly responsible and not shielded by qualified immunity for the purposes of summary judgment.

Conclusion

Accordingly, the motion to strike is DENIED [D.E.102]. Defendants' motion for summary judgment [D.E. 93] is GRANTED in part and DENIED in part. As for Officer Diaz and Dodson, they are dismissed from the suit. Defendants' summary judgment is denied as to Warden Stansberry, Lieutenant Roy, and Officer Boyd. The court will set this matter for trial by separate order.

SO ORDERED, this the 21 day of March 2013.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE